**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

In re:

NECOLE MARIE KUCINSKI and
BRIDGER GENE KUCINSKI,

    Debtors.

Case No. 26-11428 KHT
Chapter 11

**ORDER ON MOTIONS FOR RELIEF FROM STAY**

THIS MATTER came before the Court on the *Motion for Relief from the Automatic Stay (2509 Ehrich Street, Colorado Springs, CO 80904)* (docket #54) and the *Motion for Relief From the Automatic Stay (1001 Race Street and 1003 Race Street)* (docket #77) (collectively, the "Motions"), filed by Integrity Bank & Trust (the "Bank"), and the *Objection to Integrity Bank & Trust's Motion for Relief from Stay (2509 Ehrich Street)* (docket #81) and *Objection to Integrity Bank & Trust's Motion for Relief from Stay (1001 and 1003 Race Street)* (docket #100) (collectively, the "Objections"), filed by the Debtors, Necole and Bridger Kucinski ("Debtors"). The Court held an evidentiary hearing on the Motions on June 15 and 16, 2026, following which the matter was taken under advisement. The Court is now prepared to rule and hereby finds and concludes as follows:

## I.    JURISDICTION

This Court has jurisdiction over this matter under 28 § 1334(a) and 28 U.S.C. § 157(a) and (b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G), as it involves administration of the bankruptcy estate and involves a motion to terminate, annul, or modify the automatic stay.

## II.    STIPULATED FACTS

The parties stipulated to the following facts:

### A.    Construction Loan.

1.    On December 2, 2020, pursuant to that certain Construction Loan Agreement (the "CLA"), the Bank made a loan of money to Go Freedom Nation Investment Group, LLC ("GFN"), an entity owned exclusively by the Debtors, in the principal amount of $448,443.00 (the "Construction Loan").

2.    In furtherance of the Construction Loan, GFN made, executed and delivered its promissory note to the Bank in the principal amount of $448,443.00 (the "Construction Loan Note").

3.    To secure the obligations under the CLA and Note, GFN executed that certain Construction Deed of Trust dated December 2, 2020 (the "Construction Loan DOT") which granted a first position security interest against 2509 Ehrich Street, Colorado Springs, CO

80904 ("Lot 20") and was recorded with the Clerk and Recorder of El Paso County, Colorado, on December 8, 2020, at Reception No. 220199304.

4.    As an inducement to making the Construction Loan, on December 2, 2020, the Debtors and Go Freedom Ventures dba K2 Homes each gave their absolute and unconditional guarantee of GFN's obligations under the CLA and Note (the "Construction Loan Guarantees").

5.    The Construction Loan Note has been modified from time to time, by execution of Change in Terms Agreements (collectively, the "Construction CITs"), as provided for below:

| Execution Date | Description of Principal Change in Terms |
|---|---|
| December 6, 2021 | Extension of maturity date to March 1, 2022 |
| March 14, 2022 | Extension of maturity date to June 1, 2022 |
| June 29, 2022 | Extension of maturity date to December 1, 2022 |
| December 20, 2022 | Extension of maturity date to June 1, 2023 |
| June 12, 2023 | Extension of maturity date to December 1, 2023 and increase the principal balance of the Construction Loan to $523,433.00 |
| November 6, 2023 | Extension of maturity date to January 1, 2024 |
| February 6, 2024 | Extension of maturity date to February 28, 2024, and increase the principal balance of the Construction Loan to $549,685.00 |
| April 24, 2024 | Extension of maturity date to November 1, 2024, and increase the principal balance of the Construction Loan to $610,309.27 |
| December 23, 2024 | Extension of maturity date to December 1, 2027 |
| January 13, 2025 | Change monthly payments from due on the 1st to the 20th |

6.    The Construction DOT has been modified from time to time, by execution of Modification of Deeds of Trust (the "Construction DOT Modifications"), as provided for below:

| Recording Date | Recording Number | Description of Modification |
|---|---|---|
| November 13, 2023 | 223093766 | Increase of principal balance of the Construction Loan to $523,433.00 |
| February 9, 2024 | 224009585 | Increase of principal balance of the Construction Loan to $549,685.00 |
| April 25, 2024 | 224030633 | Increase of principal balance of the Construction Loan to $610,309.27 |

7.    In order to further secure the Construction Loan, GFN executed that certain Assignment of Rents ("Construction AOR") dated April 24, 2024, that was recorded with the Clerk and Recorder of El Paso County, Colorado, at Reception No. 224030634.

2

**B.** **Line of Credit**.

8. On September 28, 2022, pursuant to that certain Business Loan Agreement (the "BLA"), the Bank issued a line of credit (the "Line of Credit") to the Debtors, jointly and severally, in the principal amount of $152,000.00.

9. In furtherance of the Line of Credit, the Debtors made, executed and delivered their promissory note to the Bank in the principal amount of $152,000.00 (the "LOC Note").

10. To secure the obligations under the BLA and LOC Note, GFN executed that certain Deed of Trust dated September 28, 2022 (the "LOC DOT") which granted a second position security interest against Lot 20 and was recorded with the Clerk and Recorder of El Paso County, Colorado, on September 30, 2022, at Reception No. 22125764.

11. The LOC DOT also granted a first position security interest against 1001 Race Street, Colorado Springs, CO 80904 ("1001 Race"), and 1003 Race Street, Colorado Springs, CO 80904 ("1003 Race").

12. The LOC DOT also granted a third position security interest against 90 Polo Pony Drive, Colorado Springs, 80904.

13. As an inducement to making the LOC, on September 28, 2022, Go Freedom Nation Investment Group Ltd., and Go Freedom Ventures, LLC, each gave their absolute and unconditional guarantee of Debtors' obligations under the BLA and LOC Note (the "LOC Guarantees").

14. The Line of Credit has been modified from time to time, by execution of Change in Terms Agreements (collectively, the "LOC CITs"), as provided for below:

| Execution Date | Description of Principal Change in Terms |
|---|---|
| December 20, 2022 | Extension of maturity date to June 1, 2023 |
| March 13, 2023 | Increase principal balance of Line of Credit to $200,000.00 |
| November 6, 2023 | Extension of maturity date to January 31, 2024 |
| February 6, 2024 | Extension of maturity date to February 28, 2024 |
| April 24, 2024 | Extension of maturity date to November 1, 2024 and increase principal balance of Line of Credit to $222,937.13 |
| December 23, 2024 | Extension of maturity date to December 1, 2027 |
| January 13, 2025 | Change monthly payments from due on the 1st to the 20th |

15. The LOC DOT has been modified from time to time, by execution of Modification of Deeds of Trust (the "LOC DOT Modifications"), as provided for below:

| Recording Date | Recording Number | Description of Modification |
|---|---|---|
| March 16, 2023 | 223021313 | Increase of principal balance of the Line of Credit to $200,000.00 |
| April 25, 2024 | 224030827 | Increase of principal balance of the |

3

| | | Line of Credit to $222,937.13 |
|---|---|---|

### C.    Encumbrances Against Lot 20.

16.    On February 9, 2024, Mar Mar Inc. d/b/a Meyer Electric recorded a Statement of Lien against Lot 20 for unpaid labor or materials, in the amount of $14,581.00, with the Clerk and Recorder of El Paso County, Colorado at Reception No. 224009509 (the "Mechanics Lien").

17.    On March 27, 2024, Debtor Necole Kucinski caused GFN to execute and record that certain Quitclaim Deed with the Clerk and Recorder of El Paso County, Colorado, at Reception No. 224016555 which purported to transfer Lot 20 from GFN to Necole.

18.    On December 27, 2024, Good Funds Lending recorded a Transcript of Judgment (the "Good Funds Lending Transcript"), in the amount of $200,685.19, relating to a judgment it obtained against Debtors and GFN, which by operation of law encumbered Lot 20 and all other real property owned by GFN and the Debtors.

19.    As of the Petition Date, the amount due and owing to the Bank under the Construction Loan totaled $742,188.56 and encumbered Lot 20.

20.    As of the Petition Date, the amount due and owing to the Bank under the Line of Credit totaled $275,761.65 and encumbered Lot 20.

21.    Good Funds Lending filed Proof of Claim No. 13 asserting a claim in the amount of $175,368.81.

22.    The priority of the encumbrances against Lot 20 can be summarized as follows:

| Creditor | Specific Encumbrance | Extent of Encumbrances as of Petition Date |
|---|---|---|
| Bank | Construction Loan DOT | $742,188.56 |
| Bank | Line of Credit DOT | $275,761.65 |
| Mar Mar Inc. | Mechanics Lien | $14,581.00 |
| Good Funds Lending | Good Funds Lending Transcript | $180,685.19 |
| **TOTAL** | | **$1,213,216.40** |

23.    On January 28, 2026, the Bank had an appraisal performed of Lot 20 that indicated the value thereof, based upon the sales approach, is $960,000.00, which fact was introduced into evidence at the preliminary hearing on May 19, 2026, and the ultimate conclusion of the value of Lot 20 was admitted into evidence.

### D.    Encumbrances Against 1001 Race and 1003 Race.

24.    On March 5, 2024, Debtor Necole Kucinski executed that certain Deed of Trust in favor of Frank Prybyla (the "Prybyla DOT"), which granted a lien against 1001 Race and 1003 Race, in order to secure the repayment of a promissory note in the principal

4

amount of $9,000.00 that was recorded with the Clerk and Recorder of El Paso County, Colorado, on March 5, 2024, at Reception No. 224015806.

25.    On September 30, 2024, Liberty Millenium LLC ("Liberty") recorded a Transcript of Judgment (the "Liberty Transcript"), in the amount of $6,808.47, relating to a judgment it obtained against the Debtors and GFN, which by operation of law encumbered 1001 Race and 1003 Race and all other real property owned by GFN and the Debtors.

26.    On December 27, 2024, the Good Funds Lending Transcript was recorded, in the amount of $200,685.19, relating to a judgment it obtained against the Debtors and GFN, which by operation of law encumbered 1001 Race and 1003 Race and all other real property owned by GFN and the Debtors.

27.    Good Funds Lending filed Proof of Claim No. 13 asserting a claim in the amount of $175,368.81.

28.    The priority of the encumbrances against 1001 Race and 1003 Race can be summarized as follows:

| 1001 Race | | |
|---|---|---|
| **Creditor** | **Specific Encumbrance** | **Extent of Encumbrances as of Petition Date** |
| Bank | LOC DOT | $275,761.65 |
| Prybyla | Prybyla DOT | $9,000.00 |
| Liberty | Liberty Transcript | $6,808.47 |
| Good Funds Lending | Good Funds Lending Transcript | $180,685.19 |
| **TOTAL** | | **$472,255.31** |

| 1003 Race | | |
|---|---|---|
| **Creditor** | **Specific Encumbrance** | **Extent of Encumbrances as of Petition Date** |
| Bank | LOC DOT | $275,761.65 |
| Prybyla | Prybyla DOT | $9,000.00 |
| Liberty | Liberty Transcript | $6,808.47 |
| Good Funds Lending | Good Funds Lending Transcript | $180,685.19 |
| **TOTAL** | | **$472,255.31** |

29.    On January 21, 2026, the Bank had an appraisal performed of 1001 Race that indicated the value thereof, based upon the sales approach, is $55,000.00, which fact was admitted into evidence at the preliminary hearing on June 2, 2026.

30.    On January 21, 2026, the Bank had an appraisal performed of 1003 Race that indicated the value thereof, based upon the sales approach, is $55,000.00, which fact was admitted into evidence at the preliminary hearing on June 2, 2026.

5

## III.    ADDITIONAL FACTS

Debtors are engaged in business owning and operating short-term rental properties, and Bridger Kucinski is also employed as a long-haul truck driver. Debtors and GFN own several parcels of property, some of which are residential properties and some of which are vacant lots.

### A.    A-Frame.

Prepetition, Debtors were involved in the construction of residential real property known as the "A-Frame" on Lot 20. After construction of the A-Frame was completed, Debtors used the property for short term rentals through Airbnb. At first, Debtors managed the property directly. But, Debtors subsequently hired a property management company, Renjoy. After Debtors retained Renjoy, they noticed a substantial decrease in booking revenue, largely resulting from significant fees. And, Renjoy withheld funds Debtors needed to make their payments to the Bank on the Construction Loan and the Line of Credit.

Debtors and GFN defaulted on their obligations to the Bank. In August 2025, the Bank recorded a Notice of Election and Demand to commence a foreclosure sale of Lot 20 with the Public Trustee of El Paso County, Colorado (the "Public Trustee"). In furtherance of the foreclosure sale, in October 2025, the Bank filed an action under Colo. R. Civ. P. 120, in the District Court for El Paso County, Colorado (the "District Court"), Case No. 2025CV32423. The District Court granted two of Debtors' requests for a continuance of the Rule 120 hearing but denied a third request. On January 23, 2026, the District Court entered its Order Authorizing Sale, which provided for the Public Trustee's sale of Lot 20. A Public Trustee sale was scheduled for February 11, 2026.

### B.    1001 Race and 1003 Race.

Debtor Necole Kucinski owns 1001 Race and 1003 Race (the "Race Properties"), which are mostly vacant lots with a garage that extends from an adjoining property onto 1003 Race. The vacant portions of the Race Properties are rented for RV storage, generating approximately $950 per month in rent. The garage is also rented for $2,000 per month.

Debtors and GFN defaulted on their obligations to the Bank under the LOC Note. In September 2025, the Bank recorded a Notice of Election and Demand to commence a foreclosure sale of the Race Properties with the Public Trustee. In furtherance of the foreclosure sale, in December 2025, the Bank filed an action under Colo. R. Civ. P. 120, in the District Court, Case No. 2025CV32819. On January 23, 2026, the District Court entered its Order Authorizing Sale, which provided for the Public Trustee's sale of the Race Properties. A Public Trustee sale was scheduled.

### C.    Bankruptcy Filings.

On February 10, 2026, Debtors, with the assistance of counsel, filed a Chapter 11 bankruptcy case, which was assigned case number 26-10783 KHT (the "Prior Case").[1] The

---

[1] On that same date, GFN also filed its Chapter 11 bankruptcy case, number 26-10784 KHT.

filing of the Prior Case stayed all foreclosure proceedings and Public Trustee sales. The Prior Case was deficient. While Debtors cured some of the deficiencies, some documents remained missing.[2] The Court dismissed the Prior Case by Order entered March 3, 2026 (docket #26 in the Prior Case).[3]

Following dismissal of the Prior Case, the Public Trustee sale of Lot 20 was rescheduled for March 11, 2026. Debtors filed the above-captioned Chapter 11 bankruptcy case (the "Current Case") on March 9, again staying all Public Trustee sales.[4] The Court denied Debtors' motion to extend the automatic stay as to them, personally (docket #55), but the stay remained in effect as to property of the estate, including Lot 20 and the Race Properties.[5]

### D. The Plan.

On June 8, Debtors and GFN filed their *Joint Plan of Reorganization Dated June 8, 2026 Small Business Under Chapter 11, Subchapter V* (the "Plan," docket #113). As set forth in the Plan, Debtors and GFN expect to reduce the amount owed to the Bank through property sales and other distributions and to maintain certain properties, including the A Frame and the real property located at 804 S. 27th Street, Colorado Springs, CO 80904 (the "Compound"), renting those properties through platforms such as Airbnb, with Necole Kucinski, rather than Renjoy, managing the rental properties.

The Plan provides for payment of administrative expenses, expected to total $50,000,[6] to be paid by monthly payments over the course of a year. It also provides for payment of tax claims in equal monthly installments with statutory interest over a 54-month period. The Plan provides for the following classifications and treatment of secured claims other than the Bank's:

| Class | Description | Treatment |
|---|---|---|
| 1 | El Paso County statutory liens on Debtors' real property for 2025 taxes | Reduced by payments made prior to confirmation and paid in full within one year |
| A | El Paso County statutory liens on GFN's real property for 2025 taxes | Paid in full within one year |
| 3 | Secretary of Veteran Affairs first mortgage on Debtors' Residence. | Paid according to contract terms, with arrears paid over five years |
| 4 | ENT Credit Union first mortgage on the Compound | Reinstated on the effective date, with arrears added to the principal balance |
| 5A | Security Service Federal Credit Union second position deed of | Reinstated on the effective date, with arrears added to the principal balance |

---

[2] The GFN case was also deficient, and those deficiencies were not cured in full.

[3] The GFN case was also dismissed by Order entered March 3, 2026.

[4] GFN filed its Chapter 11 bankruptcy case March 10, and GFN's case is jointly administered with Debtors'.

[5] *See, e.g., In re Holcomb*, 380 B.R. 813, 816 (10th Cir. BAP 2008).

[6] Administrative expense payments are expected to be reduced by retainers of $7,900 to Debtors' counsel, $7,900 to GFN's counsel, and $3,000 per case to the Subchapter V Trustee.

| | | |
|---|---|---|
| | trust on the Compound | |
| 5B | Security Service Federal Credit Union purchase money security interest in Debtors' 2019 Jeep Wrangler | Allowed at $10,000, paid through the sale of the vehicle |
| 6 | Mr. Cooper first mortgage on 1009 Race Street | Reinstated on the effective date, with arrears added to the principal balance |
| 7 | 5Star Bank judgment lien on Debtors' real property. | Deemed wholly unsecured and paid as Class 16 General Unsecured Claim |
| 8, C | Prybyla DOT | Deemed wholly unsecured and paid as Class 16 and Class F General Unsecured Claim |
| 9 | Good Funds Lending judgment lien on Debtors' real property | Deemed wholly unsecured and paid as Class 16 General Unsecured Claim |
| 10 | Kenneth E. Davidson & Assocs. judgment lien on Debtors' real property | Deemed wholly unsecured and paid as Class 16 General Unsecured Claim |
| 11, D | Liberty Millenium, LLC judgment lien on Debtors' real property | Deemed wholly unsecured and paid as Class 16 and Class F General Unsecured Claim |
| 12 | Mar Mar, Inc. mechanics' lien against the A-Frame | Paid $7,000.00 as satisfaction in full |
| 13 | Pikes Peak Credit Union judgment lien on Debtors' real property | Deemed wholly unsecured and paid as Class 16 General Unsecured Claim |
| 14 | Carrie Hess judgment lien based on unpaid child support, interest, fees | Paid $1,000 per month with a balloon payment of $140,000 in 5 years |
| 15 | Westerra Credit Union purchase money security interest in Debtors' 2018 Porshe Panamera | Allowed at $10,000 with 6.75% interest, paid over five years |
| E | Good Funds Lending, LLC first position deed of trust on GFN's real properties | Properties to be sold within one year |

As to the Bank, the Plan provides for the following classification of the Bank's secured claims:

| Property | Bank Loan Year | Class |
|---|---|---|
| 2509 Ehrich Street | 2020 | 2A |
| 2509 Ehrich Street | 2021 | 2B |
| 1001 Race Street | 2022 | 2C |
| 1003 Race Street | 2022 | 2C |
| 90 Polo Pony | 2021 | 2B |
| 90 Polo Pony | 2022 | 2C |
| 1005 Race Street | 2022 | B3 |
| 2506 Ehrich Street | 2020 | B1 |
| 2506 Ehrich Street | 2021 | B2 |
| 2501 Ehrich Street | 2020 | B1 |
| 2501 Ehrich Street | 2021 | B2 |
| 1006 S. 25th St. | 2020 | B1 |

| | | |
|---|---|---|
| 1006 S. 25th St. | 2021 | B2 |

Debtors anticipate the amount of claims in each class as follows:

- Class 2A and B1 $742,188.56
- Class 2B and B2 $158,083.34
- Class 2C and B3 $275,761.65

The Plan provides for the following treatment of the Bank's secured claims:

- 1001 Race will be sold by October 30, 2026, with sales proceeds estimated to reduce the Bank's Class 2C and B3 claims by approximately $90,000.
- Properties at 2506 Ehrich Street, 2501 Ehrich Street, and 1006 S. 25th Street will proceed to foreclosure sale. Debtors expect credit bids and/or sale proceeds from foreclosures of the Ehrich Street properties to reduce the Bank's 2A and B1 claims in the approximate amount of $255,555.00.
- Funds held by Renjoy for rents on the A-Frame will be turned over to the Bank, reducing the Bank's 2A and B1 claims in the approximate amount of $24,124.
- Class 2 and Class B claims will bear interest at 6.75% per annum, and Debtors will make monthly installment payments based on a 20-year amortization period, with the claims due and payable in 5 years and then refinanced, sold, or turned over to the Bank by deed in lieu of foreclosure. In addition to those monthly installment payments, Debtors will pay the Bank net rents from the Compound for one year.

After the reductions set forth above, Debtors estimate making the following payments:

| Class | Monthly Payment | Balloon Payment |
|---|---|---|
| 2A and B1 | $3,704.40 | $418,619.10 |
| 2B and B2 | $1,202.01 | $135,834.24 |
| 2C and B3 | $1,412.46 | $159,616.33 |

Finally, the Plan provides for two classes of unsecured claims. Class 16, consisting of general unsecured claims against Debtors, which claims total $351,252.06, will be paid pro rata from distributions of $1,500 per month, made every three months over a four-year period beginning one year after the Plan effective date. Class F, consisting of general unsecured claims against GFN, will be paid pro rata from distributions of $250 per month, made every three months over a four-year period. If the Plan is confirmed on a nonconsensual basis, the Subchapter V Trustee will make distributions after deducting any applicable fees.

Regarding feasibility, the Plan states Debtors expect to generate revenue from Bridger Kucinski's employment and from property rental income, which they expect to increase over time with Necole Kucinski's management of the short-term rental properties. When Necole Kucinski managed the Compound in 2021, she was able to generate over $140,000 in gross revenue from short term rental income. As set forth on the Plan's Exhibit E, in 2025, the Compound generated rents of $148,679.45 after platform fees, but after deducting Renjoy's fees and commissions, Debtors received only $82,502.63. As set forth on the Plan's Exhibit F, in 2025, the A-Frame generated rents of $72,017.13 after platform fees, but after deducting Renjoy's fees and commissions, Debtors received only

ORDER ON MOTIONS FOR RELIEF FROM STAY
Case No. 26-11428 KHT

$19,256.48. Debtor's projections for 2026-2027 are attached as the Plan's Exhibit C, and GFN's projections for 2026-2027 are attached as the Plan's Exhibit D.

### E. Hearing.

In its Motions, the Bank seeks relief from stay to exercise its state-law rights against Lot 20 and the Race Properties. Based on the evidence proffered at the June 2 preliminary hearing, the Court set the Motions for final hearing, which was held June 15. At the final hearing, the parties' stipulated facts, stipulated exhibits, and additional exhibits were admitted, and the Court heard the testimony of Necole Kucinski and Derrick Troyer.

Necole Kucinski testified regarding the Plan, the Debtors' income and expenses, and the feasibility of Debtors' projections. She acknowledged Debtors had not filed their tax returns for several years, from 2021 through 2025, but she testified as to the steps being taken to correct the nonfeasance. Debtors attempted to retain the services of a tax attorney who subsequently decided not to work with them. Debtors then met with a tax preparer, and after participating in a day-long intake session, they expect to retain him as soon as possible, subject to the Court's approval. Once Debtors' returns are filed and an amount due is determined, Debtors expect their tax liability will be much less than that listed on the proof of claim filed by the IRS, which asserts a priority claim of $375,562.67. Ms. Kucinski also acknowledged Bridger Kucinski's former spouse, Carrie Hess, had judgments for child support arrears, which were secured by liens on Debtors' real estate, and Ms. Hess had filed a proof of claim in the amount of $670,504.07.

Derrick Troyer testified regarding the Bank's loans. He stated the national prime rate was 6.75%, which would be an appropriate rate for a low or no-risk loan.

Following the submission of evidence and argument, the Court took the matter under advisement.

## IV. APPLICABLE LAW

Resolution of the Bank's Motions requires consideration of both 11 U.S.C. § 362(d)(2) and § 362(d)(1),[7] as discussed further below.

### A. § 362(d)(2).

Section 362(d)(2) of the Bankruptcy Code provides, in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay ...
> (2) with respect to a stay of an act against property under subsection (a) of this section if –
>  (A) the debtor does not have equity in such property; and
>  (B) such property is not necessary to an effective reorganization

§ 362(d)(2). The Bank bears the burden of proving Debtors lack equity in the properties.

---

[7] Further references to "section" are to those of the Bankruptcy Code, 11 U.S.C., unless otherwise indicated.

*See* § 362(g)(1). Debtors bear the burden of proof on all other issues. *See* § 362(g)(2).

Here, there is no dispute the Bank has met its burden of proving Debtors lack equity in the properties. Debtors must therefore prove the properties are necessary for an effective reorganization, which requires a "reasonable possibility of successful reorganization within a reasonable time." *United Savings Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 375-376 (1988).

### B.    § 362(d)(1).

Section 362(d)(1) provides the Court may grant relief from stay "for cause, including the lack of adequate protection of an interest in property of such party in interest[.]" § 362(d)(1). The Bank bears the burden of demonstrating cause exists, after which the burden shifts to Debtors to show why the stay should remain in place. *In re Busch*, 294 B.R. 137, 140 (10th Cir. BAP 2003)

Lack of adequate protection may be shown by "an erosion of the creditor's position or threatened erosion." *In re Anthem Communities/RBG, LLC*, 267 B.R. 867, 871 (Bankr. D. Colo. 2001). "The erosion may be shown through evidence of declining property values, increasing amount of the secured debt through interest accruals or otherwise ... or other factors that may jeopardize the creditor's present position." *Id.*

Lack of adequate protection is just one example of "cause"; other factors may also constitute cause, depending on the facts of the case. *See, e.g., In re Busch*, 294 B.R. at 140 ("Because 'cause' is not further defined in the Bankruptcy Code, relief from stay for cause is a discretionary determination made on a case by case basis."); *In re JE Livestock, Inc.*, 375 B.R. 892, 897 (10th Cir. BAP 2007); *In re The SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) ("Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay."). Relief from stay may be appropriate when a debtor has filed a case in bad faith. *In re Nursery Land Dev., Inc.*, 91 F.3d 1414, 1416 (10th Cir. 1996) (factors include whether debtor (1) has only one asset; (2) has only one creditor; (3) acquired property which was posted for foreclosure and the prior owners had been unsuccessful in defending against the foreclosure; (4) was revitalized on the eve of foreclosure to acquire the insolvent property; (5) has no ongoing business or employees; and (6) lacks a reasonable possibility of reorganization, and (7) the Chapter 11 filing stopped the foreclosure).

## V.    DISCUSSION

The Court will discuss separately the two subsections of § 362(d).

### A.    § 362(d)(2).

Because the Bank has met its burden of proving a lack of equity in the properties, the burden shifts to Debtors to show the properties are necessary for an effective reorganization. The Bank argues neither element is satisfied. The Court will discuss each in turn.

### 1. Necessary

First, the Bank argues the properties are not necessary for Debtors' reorganization. As to the A-Frame, the rental income is much less than that of the Compound, and Necole Kucinski admitted Debtors could reorganize with just the income generated by the Compound. As to 1001 Race, the Bank argues Debtor's plans to sell the property show it is not necessary for their reorganization. And, as to 1003 Race, the Bank argues the expected net revenue of $138 per month is so low that it cannot be considered necessary for Debtors' reorganization.

While the Bank may have a point as to any one property viewed in isolation, the Court's view cannot be so limited. Instead, the Court must view Debtors' proposed reorganization as a whole. The success of Debtors' reorganization depends on their ability to maximize their income from all sources, including Bridger Kusinski's employment, property sales, and rental income. Removing any one property as an income source would place an undue burden on the other income sources, and the cascading effect would substantially increase the risk of failure of Debtors' reorganization efforts. The Bank argues Debtors' projections are already too tight. Removing any one property would make those projections even tighter, with the potential of dooming Debtors' reorganization. The Court finds Debtors have shown each property is necessary for their reorganization.

### 2. Effective

The Bank argues Debtors' plan is not confirmable as filed, citing the following: (1) lack of feasibility, (2) lack of an appropriate interest rate, (3) improper treatment of Ms. Hess's claim, (4) failure to file tax returns, (5) impermissible modification of the VA's claim, (6) failure to address all secured claims, and (7) lack of good faith. Before addressing each in turn, the Court considers the appropriate standard:

> In assessing whether a debtor can prove "a reasonable possibility of a successful reorganization within a reasonable time," courts generally apply a lesser standard in determining whether the debtor has met its burden early in a case. This standard has been referred to as the "sliding scale" burden of proof, "intended to benefit debtors who have a realistic chance of reorganization but who have not had sufficient time to formulate a confirmable plan." As the case progresses further from the entry of the order for relief, the "sliding scale" or "moving target" burden of proof requires a greater showing than "plausibility." Rather, "a debtor must demonstrate that a successful reorganization within a reasonable time is 'probable.'"

*In re DB Cap. Holdings, LLC*, 454 B.R. 804, 819 (Bankr. D. Colo. 2011) (footnotes omitted). Here, Debtors' case is in a relatively early stage, although Subchapter V cases are expected to proceed quickly. The Court will address Bank's arguments, mindful that the question is not whether the Plan can be confirmed at this time. Instead, the question is whether Debtors have shown a plausible-to-probable likelihood of successful confirmation.

First, the Court addresses whether Debtors' plan is likely to be feasible. The parties all agree the projections are tight. And, Debtors' projections omitted some payments required under the Plan, such as administrative expenses, the IRS, Ms. Hess, and Mar Mar. These omissions will need to be corrected, and the Court will scrutinize Debtors' projections

carefully at the confirmation hearing. But, at this time, the Court finds Debtors have shown a sufficient likelihood of feasibility to proceed to a confirmation hearing.

Second, the Court addresses the Bank's argument regarding an appropriate interest rate, as required by *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004). Under *Till*, the Court's analysis must begin with the prime rate and add a risk adjustment of 1% to 3%. Here, Debtors' plan proposes the prime rate with no risk adjustment. Debtors acknowledge the interest rate will need to be adjusted, in an amount to be determined. This is a correctable problem. At this time, the Court finds Debtors have shown a sufficient likelihood of proposing an appropriate interest rate to proceed to a confirmation hearing.

Third, the Court considers the treatment of Ms. Hess's claim. The Bank argues Ms. Hess's judgment is based on child support arrears, which are entitled to priority under § 523(a)(5). In response, Debtors argue Ms. Hess is the proper party to assert an objection to the treatment of her claim. The Court notes Ms. Hess has recently retained experienced bankruptcy counsel who will be well positioned to assert an objection and negotiate a resolution, and Debtors' counsel represented discussions were underway. The Court finds Debtors have made a sufficient showing of successful resolution of this issue to proceed to a confirmation hearing.

Fourth, the Court considers Debtors' failure to file tax returns. Debtors have been candid in their acknowledgment of their past failures to file and have testified as to their current efforts to comply with applicable requirements. The Court cannot find Debtors' pre-petition failures doom their chances of reorganization. Bankruptcy exists to offer debtors a breathing spell and an opportunity to address accumulated problems. Since the filing of this case, Debtors have acted with appropriate diligence in their efforts to retain a professional and file the missing returns. The Court will allow them time to complete this task. The Court finds Debtors have made a sufficient showing the returns will be filed to proceed to a confirmation hearing.

Fifth, the Bank argues Debtors' Plan impermissibly modifies the mortgage of the Secretary of Veteran Affairs on Debtors' home. Debtors argue the Plan proposes to pay arrears, which is not an impermissible modification. The Court finds Debtors have made a sufficient showing to proceed to a confirmation hearing.

Sixth, the Bank argues Debtors did not include all their secured claims in their Plan, such as the Bank's junior lien against the Polo Pony property and Navy Federal Credit Union's secured interest in Debtors' 2003 Ford F350. Debtors acknowledged the need to address those claims in an amendment to their Plan. The Court finds Debtors have made a sufficient showing to proceed to a confirmation hearing.

Finally, the Bank argues Debtors have not proceeded in good faith, pointing to their pre-petition delays of the foreclosure proceedings; their filing of the Prior Case, which was deficient, on the eve of foreclosure, and their inability to cure the deficiencies because they chose to take a vacation; their filing of the Current Case again on the eve of foreclosure; their failure to comply with their obligations to file tax returns and pay tax liabilities; their failure to take seriously Bridger Kucinski's obligation to pay his child support obligations to Ms. Hess; and their attributing different values to their properties, which the Bank argues constitute manipulation. Debtors have acknowledged their prepetition efforts to address their financial affairs, made without the assistance of counsel, were unsuccessful. They are

now attempting to right the ship, with the assistance of experienced bankruptcy counsel. Their conduct has not been perfect, but perfection is not required of bankruptcy debtors. When considering issues of good faith, courts often apply the adage "pigs get fat, but hogs get slaughtered." *In re Williams*, 394 B.R. 550, 573 (Bankr. D. Colo. 2008). At this time, the Court cannot conclude Debtors' conduct so clearly constitutes bad faith that they should not be allowed to proceed further. Debtors have made a sufficient showing to proceed to a confirmation hearing.

In conclusion, there is no question Debtors have their work cut out for them. They need to file their tax returns and pay their tax obligations. They need to work with Ms. Hess to achieve an appropriate treatment of her claim. They need to address each Plan deficiency raised by the Bank. They will be expected to carry their burden of proof on each confirmation requirement. But, this is not the confirmation hearing. Debtors' Plan is a good start, and the case is still at a relatively early stage. Considering all the evidence before the Court, the Court finds Debtors have met their burden of showing a sufficient probability of a successful reorganization within a reasonable time. The Court will deny the Bank's Motions to the extent they seek relief under § 362(d)(2).

### B.    § 362(d)(1).

The Bank argues relief from stay should be granted for cause, including a lack of adequate protection. Regarding a lack of adequate protection, the Court cannot find the Bank has met its burden of showing an erosion in its position. The property values are not declining. Debtors have maintained insurance on the properties and have paid or will soon pay the real estate taxes. And, the Bank is fully secured, with a security interest in several different properties, adding to the level of protection. At this time, the Court cannot find the Bank is not adequately protected.

The Bank further argues relief from stay should be granted for Debtors' lack of good faith. As discussed above, Debtors' conduct has not been perfect, but perfection is not required of bankruptcy debtors. Bankruptcy cases are often filed on the eve of foreclosure. Many of the factors discussed in the *Nursery Land Development* case are inapplicable to these Debtors, who are individuals. They earn income through residential real estate rental, but they do not have employees. They have multiple creditors and multiple assets. They did not obtain any of their properties on the eve of foreclosure. Instead, they previously had success renting their properties; they experienced some setbacks including adverse health events and reduced profitability after retaining a property management company; they made some poor business or legal choices pre-petition, when they were unrepresented by counsel; and they are now trying to turn things around, with the benefit of experienced bankruptcy counsel. Necole Kucinski testified as to Debtors' intent to pay the Bank in full. To the extent there are errors in the Plan's treatment of the Bank's claim, Debtors intend to correct those errors. The Court cannot find the Bank has met its burden of demonstrating bad faith requiring relief from stay. To the extent the Bank met its burden, the Court finds Debtors have sufficiently shown why the stay should remain in place pending a confirmation hearing. The Court will deny the Bank's Motions to the extent they seek relief under § 362(d)(1).

### VI.    CONCLUSION

For the reasons discussed above, the Court cannot grant relief from stay under

§ 362(d)(1) or § 362(d)(2). The Motions will, therefore, be denied.

Accordingly, it is

HEREBY ORDERED that the Motions are DENIED.

Dated July 27, 2026                          BY THE COURT:

Kimberley H. Tyson
United States Bankruptcy Judge